IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARVIN WILLIE HAWKINS | § | |
| | § | |
| v. | § | C.A. NO. C-12-309 |
| | § | |
| LOUISIANA CORRECTIONAL | § | |
| SERVICES, ET AL. | § | |

**OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is a pro se prisoner civil rights action filed pursuant to Bivens v. Six Unknown

Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Pending is the

defendants' motion for summary judgment.  (D.E. 32).  Plaintiff filed a response in opposition to

defendants' summary judgment motion.  (D.E. 41).  Pending also is plaintiff's motion for a

summary judgment.  (D.E. 42).  For the reasons stated herein, defendants' motion is granted and

plaintiff's motion is denied.

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Pursuant to the

parties' consent, (D.E. 13; D.E. 22), this case was referred to a magistrate judge to conduct all

further proceedings, including entry of final judgment.  (D.E. 14); see also 28 U.S.C. § 636(c).

## II.  BACKGROUND

Plaintiff is currently a federal prisoner confined at the Federal Correctional Institution in

Beaumont, Texas.  However, his complaint concerns events that occurred in August 2010, while

he was confined at the Brooks County Detention Center ("BCDC") in Falfurrias, Texas where

plaintiff was held as a pre-trial detainee in the custody of the United States Marshal Service.

Plaintiff filed his original complaint on September 24, 2012, and named the following

individuals and entities as defendants: (1) Louisiana Correctional Services ("LCS");[1] (2) Warden

Javier; (3) Assistant Warden Jack; (4) Officer Danny Devilla; (5) Major Villarreal; and (6)

Captain Dazila. (D.E. 1).  A Spears[2] hearing was held on October 22, 2012.  The following

allegations were made in plaintiff's original complaint or at the hearing.  See generally Hawkins

v. Louisiana Corr. Servs., No. C-12-309, 2012 WL 6858230 (S.D. Tex. Nov. 8, 2012)

(unpublished).

In April 2010, plaintiff was on federal supervised release.  See 18 U.S.C. § 3583.  On

April 26, 2010, he was arrested in Waco, Texas for violations of his supervised release term.  He

was transferred to numerous facilities, eventually arriving at the BCDC on July 26, 2010.

Upon his arrival at the BCDC, plaintiff was initially housed in administrative segregation

while the prison officials reviewed any possible gang affiliation.  He was then originally housed

in an 8-man tank, but he was the only inmate who spoke English, and he requested that he be

moved to another housing area.  He was then moved to a 48-man dorm.

Sometime in August 2010, plaintiff was returning from chow when he witnessed ten or

more inmates attacking another offender.  He cried out, causing the other inmates to flee, and he

went to the aid of the victim who was covered in blood and when he stood up, a knife fell out

from his head.  Plaintiff picked up the knife and told the victim that he should ask the prison

officials for help and get transferred, but the victim asked plaintiff not to say anything.  Shortly

thereafter, an officer arrived for his routine count.  He claims that the officer was able to observe

---

[1] LCS was originally called Louisiana Corrections Services, Inc., but its name was changed in 1993 to LCS. LCS is a privately held company that provides correctional detention operations and management to federal, state and county governments.  LCS operates the BCDC, and the BCDC contracts with the Bureau of Prisons and Kleberg County to house both federal and state prisoners.  See http://www.lcscorrections.com.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

that the victim had been recently assaulted, but he did not inquire into the incident or offer to get

medical assistance for the injured inmate.  Plaintiff then went to the pill line and requested pain

medication for the injured inmate, but was told that he could not get medication for another

inmate.  Instead, he asked for a grievance form, which he then filed complaining that the count

officer had failed to provide assistance to an inmate who was in obvious distress.  Plaintiff

included in the grievance the knife that he had picked up following the assault.

Shortly after filing the grievance, an officer came and removed the injured inmate from

the dorm.  Then, another inmate was pulled out of the 48-man tank.

Approximately two days later, there was a shake-down of the housing area as officers

looked for weapons.  Some of the inmates were angry about the shakedown and asked the

officers why it was happening.  A female officer told the inmates that she would get Gang

Intelligence Officer Danny Devilla to come explain about the shakedown.  Officer Devilla came

to the dorm and pulled out one of the inmates that had been asking about the shakedown.  All of

them could see Officer Devilla talking to this inmate through the plate glass window, and

pointing at plaintiff and explaining that "he's the problem."

After Officer Devilla left the area, plaintiff was sitting on his bunk.  He then noticed a

group of approximately thirty inmates huddled together for about twenty minutes before the next

meal.  After eating, as plaintiff was walking to the showers, another inmate approached him and

asked him to come with him for a minute.  Plaintiff followed the other inmate who lead him to a

corner, and then all of a sudden, about thirty inmates attacked him with punches and kicks.

Plaintiff tried to reach the call button for help, and also beat on the window, and screamed from

the gate for help.  Finally, an officer arrived and yelled for the attack to stop.  Plaintiff heard the

other inmates calling him "an American snitch."

Plaintiff was taken to the infirmary where he was seen by a doctor and treated for multiple injuries. Captain Dazila came to the infirmary, and plaintiff told him that he was not safe and that he wanted to file charges with the United States Marshal Service. Captain Dazila told him he would not contact the Marshal Service. Plaintiff noted that the Sheriff was "next door," and requested that he be allowed to speak to him. Captain Dazila explained that no incident report would be filed with any outside agency.

Plaintiff was then taken to "the hole" where he remained for a few days. A medical employee told him that she would try to get him a phone call with the Marshal Service, but she later reported that the administration had denied him a phone call.

A few days later, plaintiff had a meeting with Assistant Warden Jack and Captain Devilla.[3] They told him that, as long as he was at BCDC, he would not be housed with any known members of the Pisteros gang and would therefore be safe.

Plaintiff was placed in an 8-man tank. However, he was then called out by Officer Devilla who told him that he would still be around Pisteros members, and that he would have to go to the dining hall and recreation with them, and that was just the way it had to be.

That night, plaintiff and another inmate both observed a large officer come into the tank and give a knife to another inmate, saying "this is from the G.I." The next morning, plaintiff wrote a cop-out describing what he saw. He was then called to the library and was told over the phone to tell the warden what he had allegedly seen the night before. Plaintiff told the warden about the knife that Officer Devilla had another officer bring into the tank. Officer Devilla was

---

[3] Captain Devilla is the wife of Gang Intelligence Officer Devilla, but she is not a defendant in this lawsuit.

standing right next to plaintiff as he told his story to the warden, and when plaintiff finished

talking, Officer Devilla slammed down the phone and said to plaintiff, "you didn't see nothing!".

He ordered that plaintiff be sent to "the hole."

After a few days in the hole, plaintiff was placed in an 8-man tank.  Officer Devilla

observed him in the tank and commented that he was supposed to be in "the hole."  He then

ordered all of the inmates out of the 8-man tank because that area belonged to the Latin Kings.

Officer Devilla told plaintiff that he was going back to the 48-man tank "to face the offenders he

snitched on."  Plaintiff refused, and so Officer Devilla had plaintiff sent to the hole again.  A

couple of days later, Officer Devilla said it was time to get out of the hole and face the inmates

that he had snitched on, and again, plaintiff refused.

A few more days passed, and plaintiff was then told that he was being released.  He asked

if the Marshal Service was there to pick him up on a detainer.  Major Villarreal told him that the

BCDC did not hold inmates for any other entity, and to get out.  Instead, he simply gave him his

discharge papers and told him to leave.  Plaintiff was not given a bus ticket or any money for

transportation, but simply turned out on the street.

On November 8, 2012, an order was entered retaining certain of plaintiff's claims and

dismissing others.  See Hawkins, 2012 WL 6858230, at *5-6.  Specifically, plaintiff's individual

capacity failure to protect claims against Officer Devilla and Captain Dazila were retained, as

well as his retaliation claim against Officer Devilla.  However, his remaining claims against all

other defendants were dismissed for failure to state a claim.  Id. at *7.

Defendants filed a motion for summary judgment on March 26, 2013.  (D.E. 32).

Plaintiff submitted a response in opposition on April 26, 2013.  (D.E. 41).  Simultaneously, he

also submitted his own motion for summary judgment.  (D.E. 42).

### III.  DISCUSSION

**A.      The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this

determination, the Court must examine "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law."  Id. at 251-52.  Courts must consider the record as a whole by reviewing all

pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all

justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp.,

278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence, or

evaluate the credibility of witnesses.  Id.  Furthermore, the Court may only consider affidavits

made on personal knowledge, which set forth "such facts as would be admissible in evidence,

and [show] affirmatively that the affiant is competent to testify to the matters stated therein."

Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559,

1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin

v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that

courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party

demonstrates an absence of evidence supporting the nonmoving party's case, then the burden

shifts to the nonmoving party to come forward with specific facts showing that a genuine issue

for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the

pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been

given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the

nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds

could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477

U.S. at 250-51.

**B.      Defendants' Motion For Summary Judgment.**

Defendants[4] argue that summary judgment should be granted in their favor because

plaintiff filed this action outside the two-year statute of limitations for Bivens actions.[5]  (D.E. 32,

at 2).  In addition to dismissal, they seek to recover attorneys' fees for defending this action.

**1.        Plaintiff's claims are barred by the statute of limitations.**

There is no federal statute of limitations for Bivens claims; instead, the federal courts

borrow from the forum state's general or residual personal injury limitations period.  Spotts v.

United States, 613 F.3d 559, 573-74 (5th Cir. 2010) (citing Jones v. Alcoa, 339 F.3d 359, 364

---

[4] Counsel for defendants indicates that the motion for summary judgment is submitted on behalf of "Louisiana Correctional Services, et al.," (D.E. 32, at 1), despite the fact that all defendants except Officer Devilla and Captain Dazila have been dismissed.

[5] Curiously, defendants provide a printout of the Wikipedia entry discussing Bivens in support of their motion for summary judgment.  (D.E. 32-3, at 1).  The Fifth Circuit disapproves of reliance on Wikipedia, cautioning that it is "an unreliable source of information."  Bing Shun Li v. Holder, 400 F. App'x 854, 857-58 (5th Cir. 2010) (per curiam) (unpublished) (citations omitted).  For this reason, this Court shall not rely the citations to Wikipedia.  In the future, defense counsel is urged to do the same.

(5th Cir. 2003)). In Texas, the applicable limitations period is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); see also Brown v. Nationsbank Corp., 188 F.3d 579, 590 (5th Cir. 1999) (citation omitted); accord Spotts, 613 F.3d at 574. Accrual of a Bivens claim is governed by federal law. See Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). A cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998) (citation omitted).

Defendants contend that plaintiff's complaint is untimely because his cause of action accrued in August 2010 and he did not file this action until September 24, 2012. Plaintiff argues in response that this action was filed within the limitations period because his injuries occurred as late as "September 2010," when Officer Devilla ordered him to be sent to solitary confinement, and October 26, 2010 when he was released from prison without a bus ticket or any money for transportation. (D.E. 42, at 6-7). In addition, he argues that he attempted to settle the claim on June 12, 2012 by sending a demand letter to the Brooks County jail. (D.E. 41, at 1).

Plaintiff's surviving actionable claims are based on injuries that occurred in August 2010. Absent tolling, these claims are barred by the statute of limitations because he did not file this action until September 24, 2012. Pursuant to Texas law, attempts to settle an action do not toll or waive the limitation period. See Lockard v. Deitch, 855 S.W.2d 104, 106 (Tex. App. 1993) (citations omitted). Therefore, plaintiff's June 12, 2012 letter had no effect on the statute of limitations.

Although plaintiff is correct in his assertion that his original claims arose from conduct that occurred in September and October 2010, these claims are meritless or have been dismissed.

First, his allegation that at some point in September 2010 Officer Devilla sent him to solitary confinement for "a few days" in retaliation against plaintiff for reporting his cooperation with gang members, (D.E. 42, at 6), fails to state a claim.  See Hailey v. Savers, 240 F. App'x 670, 672 (5th Cir. 2007) (per curiam) (unpublished) (plaintiff failed to state a retaliation claim pursuant to § 1983 because fifteen days of solitary confinement is "not the type of hardship[] that give[s] rise to a liberty interest protected by due process") (citing Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997)).  Accordingly, to the extent this claim was not previously dismissed, it shall be at this juncture regardless of whether it is timely.  Furthermore, plaintiff's claim arising from October 2010 based on his release from prison was previously dismissed.  See Hawkins, 2012 WL 6858230, at *5.  Therefore, because these claims are not actionable, their timeliness is irrelevant.[6]

Accordingly, because plaintiff waited over two years before filing this action, it must be dismissed as untimely.

**2.     Defendants are not entitled to attorneys' fees.**

In addition to seeking dismissal of plaintiff's claims, defendants also request an award of attorneys' fees in the amount of $1,750.  (D.E. 32, at 3).

Pursuant to 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" that arise from a civil rights action.  This purpose of this provision "was ... to make it easier for a plaintiff of limited means to bring a meritorious suit."  Christiansburg Garment Co. v. EEOC, 434 U.S.

---

[6] Moreover, even if these claims were both actionable and timely filed, this fact alone would not render plaintiff's August 2010 claims timely.

412, 420 (1978) (citation omitted).  However, a defendant may also be entitled to attorneys fees

if "a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the

plaintiff continued to litigate after it clearly became so."  Id. at 422; see also No Barriers, Inc. v.

Brinker Chilli's Tex., Inc., 262 F.3d 496, 498 (5th Cir. 2001) (quoting Christiansburg, 434 U.S.

at 422).

     Here, defendants are not entitled to attorneys' fees because plaintiff's claims were not

frivolous, unreasonable, or groundless.  Although this action shall be dismissed based on the

statute of limitations, plaintiff otherwise alleged a prima facie case sufficient to survive

preliminary dismissal.  Moreover, as a prisoner proceeding pro se, he is entitled to some leniency

regarding his legal filings, see Spotville v. Cain, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam)

(citation omitted), and there is no indication that he filed this action in bad faith.  Christiansburg,

434 U.S. at 422 (explaining that although bad faith is not prerequisite to awarding fees to

defendant, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there

will be an even stronger basis for charging him with the attorney's fees incurred by the defense")

(emphasis in original).  Finally, awarding attorneys' fees in this case would not necessarily

"deter the bringing of lawsuits without foundation," "discourage frivolous suits," and "diminish

the likelihood of unjustified suits being brought."  Id. at 420 (citations omitted).  Accordingly,

defendants' request to recover attorneys' fees is denied.

**C.**    **Plaintiff's Motion For Summary Judgment.**

     Because plaintiff's claims against Officer Devilla and Captain Dazila are untimely, his

motion for summary judgment, (D.E. 42), is denied.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (D.E. 32), is

granted, but their request for attorneys' fees, (D.E. 32), is denied.  Additionally, plaintiff's

motion for summary judgment, (D.E. 42), is denied, and plaintiff's action, (D.E. 1), is dismissed.

ORDERED this 1st day of May 2013.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE